## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW NOBLE, *et al.* | |
| *Plaintiffs*, | |
| v. | Civil Action No.: 1:22-cv-01206-CRC |
| DISTRICT OF COLUMBIA, | |
| *Defendants*. | |

## PLAINTIFFS'[1] MEMORANDUM OF LAW IN OPPOSITION
## TO THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS

Dated: August 24, 2022

Respectfully submitted,

/S/ MICHAEL A. YODER

Michael A. Yoder
THE LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201
Tel: (571) 234-5594
Fax: (571) 327-5554
michael@yoderesq.com

*Counsel for Plaintiffs*

---

[1] The Plaintiffs in this action are Matthew Noble, Matthew Smith, Jonie Smith, Allen Kelly, Bonnie Kelly, Robert Budzik, Artur Czajkowski, Ryan Nelson, Leland Schmitt, Jr., Lisa Schmitt, Travis Bevelheimer, Daniel McElwain, Eddy Jones, Marek Kosarewicz, and Patricia Glatter

# TABLE OF CONTENTS

DESCRIPTION                                                                                                                          PAGE

INTRODUCTION ................................................................................................................. 1

LEGAL STANDARD........................................................................................................... 2

ARGUMENT ........................................................................................................................ 3

    I.  PLAINTIFFS' HAVE STANDING ...................................................................... 3

        A.  PLAINTIFFS SUFFICIENTLY PLEAD FACTS TO ESTABLISH CAUSATION ............................ 3

        B.  PLAINTIFFS SUFFICIENTLY PLEAD FACTS TO ESTABLISH REDRESSABILITY................... 5

             i.  Plaintiffs seek compensatory damages for past injuries pursuant to 42 U.S.C. § 1983 ..................................................................................................... 5

             ii.  Plaintiffs also satisfy the redressability prong as to future harm .................. 6

    II.  PLAINTIFFS DUE PROCESS CLAIM IS WELL-PLED...................................................... 7

        A.  PLAINTIFFS SUFFICIENTLY ALLEGE CONSTITUTIONALLY PROTECTED LIBERTY INTERESTS ARE IMPLICATED........................................................................ 8

        B.  PLAINTIFFS SUFFICIENTLY ALLEGE THE DISTRICT FAILED TO PROVIDE AN OPPORTUNITY TO BE HEARD IN A REASONABLE TIME AND MANNER .............................9

             i.  Plaintiffs have constitutionally protected liberty interests in free speech and interstate travel .................................................................................9

             ii.  The blockade policy does not merely "risk" he erroneous deprivation of Plaintiffs' liberty interests–it guarantees it ................................................9

            iii.  The District's interest in promulgating the blockade policy....................... 10

    III. PLAINTIFFS' FIRST AMENDMENT CLAIM IS WELL-PLED ...................................... 13

    IV. PLAINTIFFS' § 1983 CLAIM FOR VIOLATIONS OF THEIR RIGHTS TO FREE SPEECH AND INTERSTATE TRAVEL IS WELL-PLED  ................................................ 14

    CONCLUSION................................................................................................... 22

# TABLE OF AUTHORITIES

CASES                                                                                      PAGE

*Aref v. Holder*, 774 F.Supp.2d. 147 (D.D.C. 2011) ............................................................. 7

*Aptheker v. Secretary of State*, 378 U.S. 500 (1964) ........................................................ 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................. 2

*Baker v. District of Columbia*, 326 F.3d 1302 (D.C. Cir. 2003) ..................................... 15

*Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564 (1972) ....................................... 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ....................................................... 2, 3

*Bolling v. Sharpe*, 347 U.S. 497 (1954) ............................................................................ 7

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) .......................................................... 11, 14

*Carey v. Brown*, 447 U.S. 455 (1980) .............................................................................. 13

*Carey v. Piphus*, 435 U.S. 247 (1978) ............................................................................... 6

*Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530 (1980) ............... 11, 14

*de Csepel v. Republic of Hungary*, 714 F.3d 591 (D.C. Cir. 2013) ................................. 5

*EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621 (D.C. Cir. 1997) ............. 16, 17

*Ellis v. Dist. of Columbia*, 84 F.3d 1413 (D.C. Cir. 1996) .............................................. 8

*Elrod v. Burns*, 427 U.S. 347 (1976) ................................................................................ 3

*Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658 (D.C. Cir. 1996) ....................................... 6

*Grayned v. City of Rockford*, 408 U.S. 104 (1972) .................................................... 11, 14

*Griffin v. Breckenridge*, 403 U.S. 88 (1971) .................................................................... 9

*Hague v. CIO*, 307 U.S. 496 (1939) ................................................................................ 12

*Imbler v. Pachtman*, 424 U.S. 409 (1976) ........................................................................ 6

*Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249 (D.C. Cir. 2005) ........... 16

*Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014) ...................................................... 5

*Kent v. Dulles*, 357 U.S. 116 (1958) ................................................................................. 9

*Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271 (D.C. Cir. 1994).....................................................3

*Laughlin v. Holder*, 923 F.Supp.2d 204 (D.D.C. 2013) ............................................................17

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, (1992) .........................................................2, 3, 6

*Marshall v. Fed. Bureau of Prisons*, 518 F.Supp.2d 190 (D.D.C. 2007) .....................................8

*Mathews v. Eldridge*, 424 U.S. 319 (1976)...............................................................................8, 9

*Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299 (1986) ...................................................6

*Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) ...........................................................................7

*Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658 (1978)......................................15

*Monroe v. Pape*, 365 U.S. 167 (1961) ........................................................................................6

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ..................................................................................8

*Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981) ................................................................6

*Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37 (1983)............................11, 14

*Propert v. Dist. of Columbia*, 948 F.2d 1327 (D.C. Cir. 1991) .............................................7, 8

*Rann v. Chao*, 154 F. Supp. 2d 61 (D.D.C. 2001) ......................................................................2

*Sabra as next friend of Baby M v. Pompeo*, 453 F.Supp.3d 291 (D.D.C. 2020) .........................9

*Sandin v. Connor*, 515 U.S. 472 (1995)......................................................................................8

*Schneider v. State of New Jersey*, 308 U.S. 147 (1939)......................................................11, 14

*Short v. Chertoff*, 37 F.Supp.2d 41 (D.D.C. 2007) ...................................................................16

*Smith v. Wade*, 461 U.S. 30 (1983).............................................................................................6

*Soeken v. Herman*, 35 F.Supp.2d 99 (D.D.C. 1999).....................................................................7

*Stanley v. Illinois*, 405 U.S. 645 (1972).....................................................................................15

*Swierkiewicz v. Sorema N. A.*, 534 U.S. 506 (2002)....................................................................5

*United States v. Guest*, 383 U.S. 745 (1966) ..............................................................................9

*United States Postal Service v. Council of Greenburgh*, 453 U.S. 114 (1981) ...................11, 14

*West v. Atkins*, 487 U.S. 42 (1988) ................................................................ 14

*West v. Lynch*, 845 F.3d 1228 (D.C. Cir. 2017)........................................... 6

*Zemel v. Rusk,* 381 U.S. 1 (1965) ................................................................ 9

**CONSTITUTION**                                                            **PAGE**

U.S. Const. amend. I ................................................................. 3, 4, 13-14

**U.S. CODE**                                                               **PAGE**

42 U.S.C. § 1983.................................................................... 4-6, 14-15

## INTRODUCTION

There is perhaps no state action more offensive to the First Amendment than prohibiting American citizens from entering our nation's capital to engage in constitutionally protected free speech activity simply because the speakers' viewpoint differs from that of the incumbent administration. But this is *precisely* the state action Plaintiffs challenge in this case.

Plaintiffs filed their Complaint for damages and injunctive relief to redress the irreparable First Amendment harm and the deprivation of their fundamental right to interstate travel caused directly and proximately by the District from March 14-18, 2022, and to prevent the likely deprivation of those interests in the future. In response, the District moved to dismiss Plaintiffs' Complaint pursuant to Rule 12(b)(1) and (b)(6), alleging Plaintiffs failed to sufficiently plead Article III standing and otherwise failed to state a claim.

The core of the District's motion rests on the erroneous presumption that no District blockade policy exists. But this position is utterly contradicted by not only MPD Sgt. Bagshaw's statements, who advised Plaintiffs the blockades were the product of "a restriction that has been put in place", but also, public exchanges between MPD's Union Shop Steward and D.C. Police Chief and Assistant Chief concerning two deaths MPD caused just four (4) days before the occurrences giving rise to this action. The remainder of the District's motion consists of specious allegations that teeter traitorously close to abject falsehoods, such as the assertion that Plaintiffs failed to allege the District caused their injuries, or the contention that Plaintiffs should have disregarded direct orders from MPD to cease their attempts to enter the District or face a direct threat of arrest. Notwithstanding the District's valid argument as to Plaintiff's Count II, Equal Protection claim,[1] the District's motion should otherwise be denied entirely. Plaintiffs

---

[1] Plaintiffs voluntarily dismiss Count II – Equal Protection.

overwhelmingly satisfy the notice pleading standard pursuant to Rule 8(a)(2) and their Complaint sufficiently satisfies Article III standing and Plaintiffs Due Process, Free Speech, right to interstate travel, and 42 U.S.C. § 1983 claims are well-pled.

For the forthcoming reasons and as further articulated herein, the District's motion to dismiss should be denied.

## LEGAL STANDARD

To survive a Rule 12(b)(1) motion to dismiss, the plaintiff bears the burden of establishing that the court has jurisdiction by a preponderance of the evidence. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, (1992). The court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff, but the court need not "accept inferences unsupported by the facts alleged or legal conclusions that are cast as factual allegations." *Rann v. Chao*, 154 F. Supp. 2d 61, 64 (D.D.C. 2001).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (internal quotation marks omitted); *accord Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft*, 129 S. Ct. at 1949. And "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 1950.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 1949. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.*, quoting *Twombly*, 550 U.S. at 556. The complaint is construed liberally in plaintiff's favor, and the Court should grant plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994).

## ARGUMENT

## I.    PLAINTIFFS HAVE STANDING

To establish Article III standing, Plaintiffs must allege "(1) [an] injury-in-fact; (2) causation; and (3) redressability." *Lujan*, 504 U.S. at 560-61. Defendants do not contest Plaintiffs fail to sufficiently plead injury-in-fact; indeed, such element is well-pled. In their Complaint, Plaintiffs allege the District "depriv[ed] Plaintiffs of their constitutional rights to interstate travel and free speech," (Compl. ¶¶ 47, 51-55, 90-94, 105, 109), and the Supreme Court recognizes that "[t]he loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable ***injury***." *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion). Rather, the District solely focuses on the latter two elements: causation and redressability. Each are addressed in turn.

### A.    PLAINTIFFS SUFFICIENTLY PLEAD FACTS TO ESTABLISH CAUSATION.

It is not subject to reasonable dispute that Plaintiffs allege the District, by and through its Metropolitan Police Department ("MPD"), directly and proximately caused the aforesaid injury-in-fact. Specifically, Plaintiffs allege "[MPD] had formed blockades at the points of entry into the District . . . for the sole purpose of preventing [Plaintiffs] from entering our nation's capital to exercise their constitutionally protected right to free speech." (Compl. at 1). Plaintiffs further allege "MPD's presence was solely, proximately, and exclusively due to Plaintiffs' potential for

First Amendment activity in the District of Columbia"[2] (*id.* at 4) and "[MPD] acting under color

of state law, deprived and continue to deprive Plaintiffs of their First Amendment rights guaranteed

by the U.S. Constitution in violation of 42 U.S.C. § 1983." *Id.* ¶ 105.

Nevertheless, the District argues that "[Plaintiffs] have failed to plausibly allege that the

District's conduct caused their injury . . ." (Mot. Dismiss at 11) because Plaintiffs failed to try

entering the District via every single route that exists. *Id.*, ("[T]here are dozens of roads leading

into the District of Columbia, many of which are specifically designated as "citywide truck and

bus routes."). But Plaintiffs are not required to attempt–let alone plead–entering the District by

every single conceivable access point in order to sustain a constitutional deprivation, especially

when MPD engaged in the following dialogue:[3]

| | |
|---|---|
| MPD Cpt. Bagshaw at 2:03: | "It's **a restriction that has been put in place**." |
| Plaintiff Kelly at 2:05: | "Why?" |
| MPD Cpt. Bagshaw at 2:13: | "**It's blocked**, there's nothing I can tell you about it." |
| Plaintiff Kelly at 3:05: | "Is there another way in [to D.C.] other than this exit?" |
| MPD Sgt. Mahl at 3:10: | "There is **absolutely not** – not with your commercial vehicles." |
| Plaintiff Kelly at 9:05: | "Is there another route in there [to DC]?" |
| MPD Sgt. Mahl at 9:09: | "**Not to the downtown area**." |

---

[2] Stephanie Ramirez, *DC police leadership makes changes after union raises serious safety concerns over MPD trucker response*, FOX5 DC, (Mar. 14, 2022) available at: https://www.fox5dc.com/news/dc-police-leadership-makes-changes-after-union-raises-serious-safety-concerns-over-mpd-trucker-response (last accessed Aug. 23, 2022).
[3] Stefan Kleinhenz, *DC POLICE*, ONE AMERICA NEWS (Mar. 16, 2022) available at: shorturl.at/GHRZ6 (last accessed Aug. 23, 2022) (time stamps next to speaker name).

Not only did MPD block four (4) different routes into the District; MPD further advised no other routes accessed Washington, DC, thereby leading Plaintiffs (and any other reasonable person) to believe there is no means by which the District can be accessed.[4] At the motion to dismiss stage, Plaintiffs merely need to plead the elements of their claims; they need not "allege facts rebutting every possible affirmative defense." *Id.* (citing *de Csepel v. Republic of Hungary*, 714 F.3d 591, 607–08 (D.C. Cir. 2013) ("plaintiffs must plead the elements of their claims with specificity, they are not required to negate an affirmative defense in their complaint")) (brackets, citation, and internal quotation marks omitted).

Boiled down to its essence, the District alleges Plaintiffs fail to sufficiently plead standing because they lacked knowledge as to the "dozens of routes" into and trusted MPD officers who advised there was "absolutely not" (Mot. Dismiss at 11) another way into the district. *Id.* This is inconsistent with the federal pleading standard, which merely calls for "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2). The basic objective of Rule 8(a)(2) "is to avoid civil cases turning on technicalities." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10, 11 (2014). And in civil rights cases such as this action, a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)." *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002). As such, Defendants argument as to causation bears no merit.

## B. PLAINTIFFS SUFFICIENTLY PLEAD FACTS TO ESTABLISH REDRESSABILITY.

### i. Plaintiffs seek compensatory damages for past injuries pursuant to 42 U.S.C. § 1983.

Plaintiffs allege they are entitled to economic damages. (Compl. ¶¶ 63, 76, 102, 111, p. 19), and it is well within the Courts jurisdiction to award damages for claims brought pursuant to

---

[4] *See supra*, fn. 3 at 2:03; 2:13; 3:10; 9:09.

42 U.S.C. § 1983. The Supreme Court has repeatedly noted that 42 U.S.C. § 1983 creates "'a species of tort liability' in favor of persons who are deprived of 'rights, privileges, or immunities secured' to them by the Constitution." *Memphis Comm. Sch. Dist. v. Stachura*, 477 U.S. 299, 305-06 (1986); *Carey v. Piphus*, 435 U.S. 247, 253 (1978) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 417 (1976). *See also Smith v. Wade*, 461 U.S. 30, 34 (1983); *Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 258–259 (1981). "Accordingly, **when § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts**. *Stachura*, 477 U.S. at 306; *Wade*, *supra*, 461 U.S., at 34; *Piphus*, *supra*, 435 U.S., at 257–58; cf. *Monroe v. Pape*, 365 U.S. 167, 196 and n. 5 (1961) (Harlan, J., concurring). (emphasis added). Thus, there is no question that Plaintiffs, based on their claims pursuant to 42 U.S.C. § 1983, plausibly allege facts sufficient to establish the redressability element of Article III standing.

####        ii.        Plaintiffs also satisfy the redressability prong as to future harm.

Defendants last argument to contest Plaintiffs lack Article III standing falls on the third and final element – redressability, which merely requires a plaintiff to plead facts that "would *likely* alleviate the particularized injury alleged by the plaintiff." *West v. Lynch*, 845 F.3d 1228, 1235 (D.C. Cir. 2017) (quoting *Fla. Audubon Soc'y v. Bentsen*, 94 F.3d 658, 663–64 (D.C. Cir. 1996) (internal quotation marks omitted). **"The key word is 'likely',"** *id*. (quoting *Lujan*, 504 U.S. at 561), and the same facts that existed on March 14-18, 2022 still exist today. Because of this, and absent injunctive relief, there is no reason to believe that MPD would act any differently today than it did on March 14-18, 2022.

The District seemingly attempts to "defend in the alternative" by asserting "Plaintiffs have failed to identify *any* policy that actually exists (written or unwritten[)]" – while

contemporaneously asserting that "[e]ven if a blockade policy did exist, on its face, it would concern the movement of traffic, not speech . . .". (Mot. Dismiss at 14). But this is negated by the District's own admission that the blockades are "a restriction that has been put in place."[5] And because no facts have changed, this policy or restriction is "capable of repetition" absent the injunctive relief requested.

## II.      PLAINTIFFS' DUE PROCESS CLAIM IS WELL-PLED

At its core, the procedural due process protections exist to safeguard against erroneous deprivations of fundamental rights and constitutionally protected liberty interests "essential to the orderly pursuit of happiness by free men." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923). "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 572 (1972); *see, e.g., Bolling v. Sharpe*, 347 U.S. 497, 499-500 (1954); *Stanley v. Illinois*, 405 U.S. 645 (1972). To protect this interest, great protections exist to ensure the "free people" to whom the Constitution is beholden remain free and do not suffer deprivations of their rights unless the state's interest compels the government to infringe upon a person's constitutionally protected freedoms. But the District's purported interests in "traffic" and "public safety" fall well short of the threshold the District must satisfy in order to survive constitutional muster.

To establish an actionable procedural due process claim, "Plaintiffs must show that (1) they have a constitutionally protected life, liberty or property interest and (2) the [District] deprived the Plaintiffs of that interest without constitutionally adequate procedure. *Aref v. Holder*, 774 F.Supp.2d. 147, 164 (D.D.C. 2011); *see Propert v. Dist. of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991); *Soeken v. Herman*, 35 F.Supp.2d 99, 104–105 (D.D.C. 1999). Generally, liberty

---

[5] *See* supra, fn. 3 at 2:03.

interests are derived from the Constitution, such as Plaintiffs' fundamental right to free speech. U.S. Const. amend. I; *see also Sandin v. Connor*, 515 U.S. 472, 484 (1995).  But this is the general rule. "The government may [also] under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.*; *see also Marshall v. Fed. Bureau of Prisons*, 518 F.Supp.2d 190, 194 (D.D.C. 2007) (citing *Ellis v. Dist. of Columbia*, 84 F.3d 1413, 1415 (D.C. Cir. 1996)).

Once a liberty interest is implicated, a "fundamental requirement" of due process is that an individual receive "the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976); *see also Propert*, 948 F.2d at 1331. In determining whether "an appropriate hearing has been provided at a meaningful time and in a meaningful matter," the court considers three factors:

> [f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

*Mathews*, 424 U.S. at 335. All the while, the court must remain mindful that "due process is flexible and calls for such procedural protections as the particular situation demands." *Id.* at 334 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

### A.   PLAINTIFFS SUFFICIENTLY ALLEGE CONSTITUTIONALLY PROTECTED LIBERTY INTERESTS ARE IMPLICATED.

Plaintiffs allege the District deprived them of their rights to free speech and interstate travel. (Compl. ¶¶ 4, 46-47, 49, 51-55, 67, 90-94, 105). There is perhaps no greater constitutionally protected liberty interest than the right to free speech. U.S. Const. amend I. And while interstate travel is not enumerated in the Bill of Rights, "[t]he constitutional right of interstate travel is

virtually unqualified." *United States v. Guest*, 383 U.S. 745, 757–758 (1966); *Griffin v. Breckenridge*, 403 U.S. 88, 105–106 (1971); *Sabra as next friend of Baby M v. Pompeo*, 453 F.Supp.3d 291, 318 (D.D.C. 2020) (holding the right to interstate travel is a fundamental right); *see also Zemel v. Rusk,* 381 U.S. 1, 13-14 (1965) (holding international travel, *like interstate travel*, is a fundamental right); *Aptheker v. Secretary of State*, 378 U.S. 500, 505-06 (1964) (same); *Kent v. Dulles*, 357 U.S. 116, 126 (1958) (same). It is not subject to reasonable dispute Plaintiffs sufficiently plead constitutionally protected liberty interests are implicated.

      **B.**    **PLAINTIFFS SUFFICIENTLY ALLEGE THE DISTRICT FAILED TO PROVIDE AN OPPORTUNITY TO BE HEARD IN A REASONABLE TIME AND MANNER.**

           **i.**    **Plaintiffs have constitutionally protected liberty interests in free speech and interstate travel.**

In determining whether the District provided Plaintiffs "the opportunity to be heard at a meaningful time and in a meaningful manner", *Mathews*, 424 U.S. at 333, the first fator courts in this district review is the government's interest constitutionally protected interest(s) implicated by the government action, which, as previously stated, are the fundamental rights to free speech and interstate travel. (Compl. ¶¶ 4, 46-47, 49, 51-55, 67, 90-94, 105).

           **ii.**    **The blockade policy does not merely "risk" the erroneous deprivation of Plaintiffs' liberty interests – it guarantees it.**

The second consideration taken into account when evaluating whether a plaintiff had "the opportunity to be heard at a meaningful time and in a meaningful manner" *Mathews*, 424 U.S. at 333, is "the risk of an erroneous deprivation of such interest through the procedures used" – which in this case, are MPD's police-manned road blockades. *Id*. at 335. (Compl. ¶¶ 23, 26-28, 46-49, 50-60, 83, 96). Based on the very nature of the blockades and MPD's own statements, the District's challenged actions do not merely "risk" depriving Plaintiffs of their fundamental rights–

the District's actions *guaranteed* the deprivation of Plaintiffs' rights to free speech and interstate travel.

As a preliminary matter, Plaintiffs could not drive through MPD, neither legally nor even possibly. In their Complaint Plaintiffs repeatedly reference the discussions captured on video[6] with MPD Capt. Bagshaw and Sgt. Mahl (Compl. ¶¶ 28-31), "as a representative of the D.C. government"[7] (1) informed Plaintiffs there was "absolutely not"[8] another route into the District due to a "restriction that has been put in place"[9]; (2) threatened to arrest of plaintiffs[10] if they continued attempting to exercise their fundamental right to travel interstate into Washington, D.C.; and (3) even if Plaintiffs disregarded the law – which they *never did* – the blockades were not possible to traverse through or around as evidenced by the two innocent lives that were lost after crashing into one of MPD's unlawful blockades.[11] The factual allegations contained in Plaintiffs' Complaint leave no question as to whether the District's actions, at a minimum, risk erroneous deprivation of constitutionally protected liberty interests. MPD's blockade policy, threats, and statements serve as a *de facto* absolute prohibition against Plaintiffs' ability to enjoy their constitutionally protected freedoms. The District simply ignores these facts.

### iii.   The District's interest in promulgating the blockade policy.

Before analyzing the third consideration – substitute procedural safeguards – it is important to first look to the fourth and final consideration and determine what interest the District sought to effectuate in forming the blockades. That question remains unclear.

---

[6] *See supra*, fn. 3
[7] *See supra*, fn. 3 at 7:16.
[8] *See supra*, fn. 3 at 2:03.
[9] *Id.*
[10] *See supra*, fn. 3 at 5:34.
[11] *See supra*, fn. 2

Throughout their Motion to Dismiss, the District varies from alleging no blockade policy exists (which is provably false as stated above), to asserting the blockade policy seeks to effectuate the District's interest "to protect[ing] the flow of traffic", (Mot. Dismiss at 2, 17, 19, 21, 23, 24) to then claiming the blockade policy seeks to effectuate the District's interest in "protecting public safety." (*Id.* at 2, 6, 17, 19-20, 23-24). While Plaintiffs' do not anticipate the District will reveal its true policy motives until discovery, either alleged governmental interest, whether traffic or public safety, make no material difference in easily disposing of the District's motion.

As to the District's alleged interest in "protecting the flow of traffic", Plaintiffs' constitutional protections do not give way to the governmental interest of mitigating beltway congestion. (Mot. Dismiss at 19). Indeed, no court in American jurisprudence has held that lessening traffic delays, alone, trumps a citizen's interest in exercising his or her fundamental rights. But even if the government's interest in traffic flow rose to the level of an important governmental interest, the District would only be permitted to impose reasonable time, place, and manner restrictions, which the blockade policy is certainly not (as discussed in Section III).

Even if Plaintiffs had disregarded direct orders from MPD and attempted to enter the District via some unspecified or alternative route, such action would have been unlawful; thus, the notion that the blockade policy did not prohibit all communicative activity, the time, place, and manner restriction is entirely negated. Indeed, an essential element is that the policy must still be ***reasonable***. And, to the extent ignoring MPD's "lawful order" to cease attempting to enter the District and travel elsewhere would have been, lawful, the District's blockade policy is *still* unreasonable as it would not have effectuated the interests in mitigating traffic. Every single Plaintiff traveled in a Bobtail[12] or standard Class II passenger motor vehicle. The length of a

---

[12] A "Bobtail" is the cab portion of an 18-wheeler semi-truck, exclusive of a trailer in tow.

Bobtail averages just 24 feet[13]; shorter than a Class A motorhome, WMATA bus, school bus, coach bus, and many box trucks. Dozens of coach buses descend on Washington every day. Thousands of deliveries are made each day and the District itself operates hundreds of WMATA and circulator buses; yet none of these vehicles impede traffic to the extent they are barred from entering our nation's capital.

Secondly, in what appears to be a throwaway argument, the District's dubious assertion that MPD formed blockades to provide for "public safety" is fatally flawed for *at least* three reasons. First, MPD officers' own statements acknowledging that Plaintiffs were peaceful and posed no threat.[14] Secondly, the assertion that the MPD blockades effectuated public safety is utterly obliterated by the fact that the District – not Plaintiffs or any other civilians – are directly, proximately, and solely responsible for claiming the lives of not one, but two innocent people.[15] And third, MPD itself acknowledged, both in their own words and through the District's Police Union Chief, that the blockades were dangerous and *exacerbated* the danger to public safety; the blockades *did not* mitigate those dangers.

In reality, the District's blockade policy is a content-based exclusion based on the differences between the views Plaintiffs hold and the views of the incumbent Administration. But in order for the District to enforce a content-based exclusion, it must show that the regulation is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *Carey v. Brown*, 447 U.S. 455, 461 (1980). Defendants cannot meet that standard here as the blockades did not effectuate either of the purported interests offered in lieu of the true purpose to chill free speech.

---

[13] iContainers, *What is a Bobtail?* (Sept. 20, 2020), available at: shorturl.at/gRZ01 (last accessed Aug. 24, 2022).
[14] *See* supra, fn. 3 at 2:03.
[15] Peter Hermann, et al., *Two Die in Fiery Crash on freeway in D.C.,* THE WASHINGTON POST (Mar. 9, 2022), available at: https://www.washingtonpost.com/dc-md-va/2022/03/08/fatal-dc-car-crash-freeway/ (last accessed Aug. 24, 2022).

Irrespective of what interest the government alleges, whether to mitigate traffic or promote public safety, the outcome remains unchanged: It is not subject to reasonable dispute that Plaintiffs' procedural due process claim is well-pled.

## III.   PLAINTIFFS' FIRST AMENDMENT CLAIM IS WELL-PLED

It is well-established that state action depriving one of his or her fundamental right to free speech must satisfy strict scrutiny.  While the state may enforce regulations of the time, place, and manner of expression, those restrictions must be content-neutral, narrowly tailored to serve a significant government interest and leave open ample alternative channels of communication. *United States Postal Service v. Council of Greenburgh*, 453 U.S. 114, 132 (1981); *Consolidated Edison Co. v. Public Service Comm'n*, 447 U.S. 530, 535–536 (1980); *Grayned v. City of Rockford*, 408 U.S. 104, 115 (1972); *see also Cantwell v. Connecticut*, 310 U.S. 296 (1940); *Schneider v. State of New Jersey*, 308 U.S. 147 (1939). Thus, in places which by long tradition or by government fiat have been devoted to assembly and debate, such as public roadways in the District of Columbia, the rights of the state to limit expressive activity are sharply circumscribed. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 43-45 (1983). Public streets in particular "have immemorially been held in trust for the use of the public, and, time out of mind, have been used for purposes of assembly, communicating thoughts between citizens, and discussing public questions." *Hague v. CIO*, 307 U.S. 496, 515 (1939). There is no location with "long tradition" devoted to assembly and debate than the capital city of the United States.

Here, Defendants seek dismissal of Plaintiffs' First Amendment claim on the basis that "Plaintiffs do not allege that they were prevented from protesting or engaging in any other First Amendment activity in the District." (Mot. Dismiss at 20). Again, this assertion is baseless. Plaintiffs Complaint unquestionably alleges that Plaintiffs attempted to enter the District on four

different occasions, (Compl. ¶¶ 23, 25, 27, 30); that MPD formed blockades preventing Plaintiffs from entering the District, (*id.* ¶¶ 23, 26-28, 46-49, 50-60, 83, 96); that MPD threatened to arrest Plaintiffs if they continued to attempt to enter the District, (*id.* ¶¶ 30-31); and that **the District depriv[ed] Plaintiffs of their fundamental rights to enter the District of Columbia and engage in free speech . . .".** (*id.* ¶ 105) (emphasis added).

## IV. PLAINTIFFS' § 1983 CLAIM FOR VIOLATIONS OF THEIR RIGHTS TO FREE SPEECH AND INTERSTATE TRAVEL IS WELL-PLED.

Finally, the District's last challenge seeks dismissal of Plaintiffs' § 1983 claim alleging violations of their constitutional rights to interstate travel and free speech.

To state a claim under § 1983, a plaintiff must plead facts sufficient to establish "(1) the violation of a right secured by the Constitution and the laws of the United States and (2) that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). For purposes of brevity, Plaintiffs respectfully direct the Court's attention to the foregoing analysis as to (1) their constitutionally protected rights to free speech and interstate travel and (2) the actions committed by District officials, including at least one MPD officer who by his own admission, acted "as a representative of the D.C. government."[16]

In addition to satisfying the elements of 42 U.S.C. § 1983, in order for Plaintiffs to hold the District (a municipality) liable under § 1983, Plaintiffs must also plead facts that demonstrate that the District's "policy or custom" caused the constitutional injury. *See Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 694 (1978); *Baker v. District of Columbia*, 326 F.3d 1302, 1305 (D.C. Cir. 2003). Plaintiffs easily satisfy this pleading requirement.

In their Complaint, Plaintiffs allege the District deprived and continue to deprive Plaintiffs of their fundamental rights to free speech and interstate travel in violation of 42 U.S.C. § 1983 by,

---

[16] *See* supra, fn. 3 at 7:16.

14

*inter alia* (1) refusing Plaintiffs to exercise their fundamental right to interstate travel; (2) depriving

Plaintiffs of lawful entry to the District of Columbia; (3) depriving Plaintiffs of their fundamental

right to engage in free speech; (3) depriving Plaintiffs of their fundamental rights to enter the

District of Columbia and engage in free speech for reasons that are not substantially related to an

important government interest; (4) failing to provide a reasonable basis for denying Plaintiffs entry

to the District of Columbia; (5) failing to provide a reasonable basis for depriving Plaintiffs of their

fundamental right to engage in free speech; (6) favoring the viewpoints of other activists and

political organizations over the viewpoint Plaintiffs share; and (7) expending District funds and

resources to deprive Plaintiffs of their fundamental rights to enter the District of Columbia and

engage in free speech." (Compl. ¶105). Each of the aforesaid violations are directly and

proximately caused by "a restriction that has been put in place"[17] by the District of Columbia, as

alleged in Plaintiffs' Complaint more than two dozen times.[18]

Indeed, Plaintiffs allegations are consistent with not only MPD Cpt. Bagshaw's statements,

but also evidenced by the exchanges between MPD's Union Shop Steward, Adam Shataal, D.C.

Police Chief, Robert Contee, D.C. Assistant Police Chief, Jeffrey Carroll, and D.C. Police

Commander, Robert Glover.[19] Specifically, on or about March 10, 2022 – four (4) days prior to

the incidents giving rise to this action – the D.C. Police Union "**raised safety concerns over how**

**the District's police department** [blockade policy implements] stationary traffic posts that have

---

[17] *See* supra, fn. 3 at 2:03.

[18] Plaintiffs refer to the blockade policy more than two-dozen times and specifically use the verbiage "The District's blockade policy, custom, practice, or procedure . . ." *twenty-five* (25) times. (Compl. ¶¶ 46-50, 52, 54, 56-57, 59-60, 72-73, 83, 89, 91, 93, 95, 96, 98-99, 107-08, p. 18).

[19] Stephanie Ramirez, *DC police leadership makes changes after union raises serious safety concerns over MPD trucker response* Fox5 (Mar. 14, 2022), available at: https://www.fox5dc.com/news/dc-police-leadership-makes-changes-after-union-raises-serious-safety-concerns-over-mpd-trucker-response (last accessed Aug. 24, 2022).

police members and city workers sitting on the side of the highway in 12-hour **mandatory** shifts."[20]

The aforesaid exchanges may be considered in ruling on the District's motion because the District has moved to dismiss Plaintiffs' Complaint for lack of subject matter jurisdiction. *Short v. Chertoff*, 37 F.Supp.2d 41 (D.D.C. 2007) ("The court may look beyond the allegations contained in the complaint to decide a facial challenge, 'as long as it still accepts the factual allegations in the complaint as true'.") (citing *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253–54 (D.C. Cir. 2005))). Indeed, as the District correctly points out, the Court "may consider … the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the Court] may take judicial notice." *EEOC v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Laughlin v. Holder*, 923 F.Supp.2d 204, 209 (D.D.C. 2013).

As such, the District's assertion that Plaintiffs' fail to state a claim for relief pursuant to 42 U.S.C. § 1983 is meritless and their motion to dismiss their § 1983 claim should be denied.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied as to Counts I, III, IV, and V. Plaintiffs voluntarily dismiss their Count II Equal Protection claim.

Dated: August 24, 2022

Respectfully submitted,

/S/ MICHAEL A. YODER
Michael A. Yoder
THE LAW OFFICE OF MICHAEL A. YODER, PLLC
2300 Wilson Blvd., Suite 700
Arlington, VA 22201

---

[20] *Id.* (emphasis added).

Tel: (571) 234-5594
Fax: (571) 327-5554
michael@yoderesq.com

*Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 24, 2022, Plaintiff's Memorandum in Opposition to Defendants' Motion to Dismiss was filed and served via the Court's CM/ECF electronic system upon all parties of record.

/S/ MICHAEL A. YODER
Michael A. Yoder