**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **MATTHEW NOBLE,** *et al.*,<br><br>      **Plaintiffs,**<br><br>      v.<br><br>**DISTRICT OF COLUMBIA,**<br><br>      **Defendant.** | **Civil Action No. 1:22-cv-01206-CRC** |

**REPLY IN FURTHER SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT**

Plaintiffs are thirteen individuals who allege that on four separate days in March 2022 they attempted to drive from Maryland to the District of Columbia, but they were allegedly prevented from entering the District by the Metropolitan Police Department (MPD) in violation of their First Amendment rights, right to interstate travel, and due process rights.[1]  However, Plaintiffs' claims rely solely on conclusory allegations that lack any plausible factual support. Therefore, Defendant District of Columbia's Motion to Dismiss (the Motion) [11] should be granted, and Plaintiffs' claims should be dismissed.

**ARGUMENT**

I.     **Plaintiffs Lack Standing To Pursue Claims for Past Injuries Because They Fail To Allege Causation or Redressability.**

In its Motion, the District explained that Plaintiffs had not established standing to bring their claims because they had not adequately alleged causation or redressability.  Mem. of P. &

---

[1]     Plaintiffs have withdrawn the alleged violation of their equal protection rights asserted in Count II.  *See* Pls.' Mem. of Law in Opp'n to the District of Columbia's Mot. to Dismiss (Pls.' Opp'n) at 1 n.1 [13].

A. in Supp. of Def.'s Mot. to Dismiss (Def.'s Mem.) at 11–13 [11-1].  In response, Plaintiffs do not identify any factual allegations establishing causation or redressability but instead point only to the many legal conclusions and conclusory statements in the Complaint that provide the framework for their claims.  Pls.' Opp'n at 3–4.  Because non-factual content in a complaint is insufficient to state a claim for relief—or to establish standing at the pleadings stage—Plaintiffs' claims should be dismissed.

While it is generally true that a court "must accept as true all of the allegations contained in a complaint," that presumption of truthfulness does not apply to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  And, "[w]hile legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679.  In keeping with these principles, a court considering a motion to dismiss will begin by "disregard[ing]" this extraneous material, then examine the remaining factual content to decide if the plaintiff has pled a viable claim. *Dewees v. United States*, 272 F. Supp. 3d 96, 100 (D.D.C. 2017) (Cooper, J.) (internal quotations to *Iqbal, supra*, omitted).  In other words, the complaint must state a *plausible* claim for relief.  *See Iqbal*, 556 U.S. at 678.  "Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.  The application of common sense to Plaintiffs scant factual allegations reveals the fatal flaws underlying their standing argument.

Plaintiffs' alleged injury was purportedly caused by "[the District's] decision to prohibit Plaintiffs from entering the District of Columbia and refusal to allow Plaintiffs to exercise their First Amendment rights."  Compl. ¶ 41 [1].  Plaintiffs must therefore allege facts that plausibly support those conclusory statements.  In an attempt to do that, Plaintiffs cite two statements from

the Complaint.  They cite their allegations that (1) "[MPD] had formed blockades at the points of

entry into the District … for the sole purpose of preventing [Plaintiffs] from entering our nation's

capital to exercise their constitutionally protected right to free speech," and (2) "MPD's presence

was solely, proximately, and exclusively due to Plaintiffs' potential for First Amendment activity

in the District of Columbia."  Pls.' Opp'n at 3–4 (citing Compl. at 3–4).  But those are exactly

the type of "threadbare recitals" that are not entitled to *Iqbal*'s assumption of veracity.

And, as outlined in the District's Motion, Def.'s Mem. at 11–13, Plaintiffs fail to allege

any facts that would support their bold assertion that the District redirected law enforcement

resources en masse to ensure every road into the District was closed to them.  Therefore,

Plaintiffs have failed to adequately allege that their purported injury, *i.e.*, an alleged inability to

enter the District, was caused by the District's alleged conduct, *i.e.*, briefly closing a small

number of exits off of a small number of roads into the District.  *Cf. Dewees*, 272 F. Supp. 3d at

102 (dismissing plaintiff taxpayer's equal protection challenge to alleged denial of participation

in IRS program where the plaintiff "ha[d] not pled that he sought entrance into the [program] or

that his application was denied" and therefore "[could not] establish that he suffered an *actual*

injury" (emphasis in original)).  In addition, given that Plaintiffs have not plausibly alleged that

the District prevented them from entering the city completely, granting them their requested

relief would not redress their alleged injury.

In an apparent attempt to cure their pleading failures, Plaintiffs point the Court to a video

posted on the Internet.  Pls.' Opp'n at 4 n.3.  Because it is a plaintiff's burden to establish

standing, the Court "may consider materials outside the pleadings in deciding whether to grant a

motion to dismiss for lack of jurisdiction."[2] *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d

1249, 1253 (D.C. Cir. 2005).[3] But the extrinsic evidence considered is usually in the form of

sworn declarations or affidavits. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975) ("[I]t is within

the trial court's power to allow or to require plaintiff to supply, by amendment to the complaint

or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's

standing."); *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) ("But where

necessary, the court may consider the complaint supplemented by undisputed facts evidenced in

the record, or the complaint supplemented by undisputed facts plus the court's resolution of

disputed facts."); *Breeze v. Kabila Inc.*, 575 F. Supp. 3d 141, 150 (D.D.C. 2021) ("Any

declarations or affidavits submitted during briefing are thus fair game for a court deciding a

jurisdictional motion."). Here, Plaintiffs have not submitted any declarations or affidavits

concerning the cited video that would enable the Court to treat it as competent evidence.

　　　　For example, while Plaintiffs' citation to the video in their Opposition indicates that the

video is purportedly a product of "One America News," the video itself bears no identifying

information except that it was "uploaded by Charles Herring" on March 30, 2022. Further,

Plaintiffs have not provided any declarations or affidavits concerning who recorded the video,

---

[2]　　　　As discussed below, Plaintiffs attempt to avoid dismissal under Rule 12(b)(6) by relying
on allegations that are not contained in the Complaint. *See* Pls.' Opp'n at 4–5. The Court should
ignore those unpled allegations. *Dye v. Pompeo*, Civil Action No. 19-1645, 2019 WL 6035195,
at *2 (D.D.C. Nov. 14, 2019) ("Plaintiff cannot rely on facts alleged in his later-filed affidavit to
supplement a factually-deficient Amended Complaint."). But, even if the Court were to consider
them, the cited video includes statements purportedly made by MPD officers that directly
contradict Plaintiffs' allegations in the Complaint. *See Dentons US LLP v. Republic of Guinea*,
208 F. Supp. 3d 330, 335 (D.D.C. 2016) ("To the extent the plain terms of [documents
incorporated into the pleadings] contradict the factual allegations of Guinea's counterclaims and
third-party complaint, moreover, the Court need not accept the conflicting allegations.").

[3]　　　　Although the Court may consider extrinsic evidence submitted by Plaintiffs to establish
their standing, it should not consider such evidence when assessing whether Plaintiffs' have stated
a claim in the Complaint. *Dye*, 2019 WL 6035195, at *2.

when it was recorded, or whether any Plaintiffs other than "Plaintiff Kelly" are present in the video or were contemporaneously aware of the statements made in the video.

Even if the Court does rely on the content of the video, Plaintiffs ignore the portions that directly contradict their allegations.[4]  Most notably, starting at the 2:45 mark, in response to questions by an unidentified speaker as to whether the speaker can enter the District to exercise his First Amendment rights, Captain Bagshaw explains to the speaker that the speaker is simply prohibited from driving a commercial truck into the city using a specific exit, but that the speaker is free to use other methods of transportation to enter the District so that the speaker can exercise his constitutional rights.  At the 4:30 mark, it is again clearly explained to the speaker that he is free to enter the District using a wide variety of vehicles, including recreational vehicles and four-wheeled trucks, but that certain restrictions were currently in effect concerning commercial vehicles.  But Plaintiffs' Complaint contains no claims relating to their purported inability to use *commercial vehicles* to exercise their constitutional rights.

II.    **Plaintiffs Lack Standing To Pursue Claims for Prospective Relief Because They Fail To Allege a Real and Immediate Threat That Any Past Injuries Are Likely To Occur Again in the Future.**

In its Motion, the District explained that Plaintiffs' claims for prospective relief should be dismissed because they failed to allege that they are "likely to be subjected to the [alleged] policy again."  Def.'s Mem. at 12 (quoting *Nat'l Sec. Counselors v. CIA*, 931 F. Supp. 2d 77, 91 (D.D.C. 2013)).  In response, Plaintiffs argue that they have met their burden because "the same facts that existed on March 14-18, 2022, still exist today" and "there is no reason to believe that

---

[4]     While Plaintiffs argue in their Opposition (but do not allege in the Complaint) that Plaintiff "Kelly" spoke with MPD, it is unclear whether Plaintiffs are referring to Plaintiff Allen Kelly or Bonnie Kelly, Pls.' Opp'n at 4, and Plaintiffs also do not explain how one Plaintiff's purported conversation with MPD officers would have impacted the remaining named Plaintiffs.

MPD would act any differently today than it did on March 14-18, 2022." Pls.' Opp'n at 6.  That

is definitional speculation.  And the authority cited by the District makes clear that Plaintiffs

must do more than simply allege an unfounded belief that they would be subjected to the alleged

policy again "some day" in the future.  Def.'s Mem. at 13–14.  Plaintiffs do not address that

authority much less attempt to distinguish it.  *See* Pls.' Opp'n at 6–7.  Even if Plaintiffs have

standing to assert claims based on past conduct (they do not), Plaintiffs do not have standing to

pursue prospective relief.

**III.**   **Plaintiffs Fail To State a Claim Under the Free Speech Clause Because Plaintiffs Have Not Identified Any First Amendment Activity at Issue and, Even If They Had, the District's Actions Withstand Constitutional Scrutiny.**

Plaintiffs' First Amendment claim is based entirely on a false premise.  Plaintiffs argue

that their Complaint "unquestionably alleges that Plaintiffs attempted to enter the District on four

different occasions; that MPD formed blockades from entering the District; that MPD threatened

to arrest Plaintiffs if they continued to attempt to enter the District; and that the District deprived

Plaintiffs of their fundamental rights to enter the District of Columbia and engage in free

speech." Pls.' Opp'n at 13–14 (citations, brackets, and emphasis omitted).  However, as

explained in the District's Motion, Plaintiffs' argument assumes that they plausibly alleged that

they were completely prevented from entering the District as opposed to being prevented from

using certain exits off of certain highways to enter the city.  *See* Def.'s Mem. at 20–21.  Because

Plaintiffs have failed to plausibly allege that they were prevented from engaging in any protected

activity in the District, their First Amendment claim should be dismissed.

Even if Plaintiffs had adequately alleged that they were prevented from engaging in

protected activity, the District has already explained that the exit closures constituted reasonable

time, place, and manner restrictions.  *See* Def.'s Mem. at 21–24.  Beyond a conclusory assertion

when discussing their due process claim (not their First Amendment claim) that the exit closures were "a content-based exclusion based on the differences between the views Plaintiffs hold and the views of the incumbent Administration," Pls.' Opp'n at 12, Plaintiffs provide no analysis or discussion as to how the exit closures, which impacted all drivers regardless of political views, were content-based.  The fact that Plaintiffs have been forced to abandon their equal protection claim given its lack of merit also demonstrates their failure to allege that the exit closures were content-based.

Finally, in a further attempt to argue that they were completely prohibited from entering the District, Plaintiffs assert in their Opposition that paragraphs 28-31 of the Complaint allege that Capt. Bagshaw, "'as a representative of the D.C. government' (1) informed Plaintiffs there was 'absolutely not' another route into the District due to a 'restriction that has been put in place'; (2) threatened to arrest [] plaintiffs if they continued attempting to exercise their fundamental right to travel interstate into Washington, D.C.; and (3) even if Plaintiffs disregarded the law—which they never did—the blockades were not possible to traverse through or around."  Pls.' Opp'n at 10.  Those allegations plainly do not appear in the cited paragraphs, *see* Compl. ¶¶ 28–31, and therefore the Court should not consider them when ruling on the District's motion to dismiss for failure to state a claim.  *Andrews v. Washington Metro. Area Transit Auth.*, 819 F. Supp. 2d 7, 12 (D.D.C. 2011) (explaining that "the allegations on which plaintiffs appear to rely in their Sur–Reply … are not found in the complaint … [therefore] these unsupported allegations are not properly before this Court").  And, as already explained above, Plaintiffs' description of the video that is seemingly the source of those non-existent allegations is simply not accurate.

**IV.**     **Plaintiffs Fail To Allege a Violation of Their Right to Interstate Travel.**

As explained in the District's Motion, an individual's constitutional right to interstate

travel is not violated anytime the government's conduct imposes minor burdens on travel and

especially not where the burdens only impact a single mode of transportation.  Def.'s Opp'n at

24–25.  Beyond asserting that a constitutional right to interstate travel exists, Plaintiffs make no

attempt to respond to the District's arguments.  "[A]n argument in a dispositive motion that the

opponent fails to address in an opposition may be deemed conceded."  *Kone v. District of

Columbia*, 808 F. Supp. 2d 80, 83 (D.D.C. 2011).  Because Plaintiffs failed to address the

District's arguments concerning the alleged violation of their right to interstate travel, the Court

should treat the District's Motion on that point as conceded.

**V.**     **Plaintiffs Fail To Allege a Violation of Their Procedural Due Process Rights.**

Plaintiffs' alleged violation of their due process rights is derivative of the alleged

violations of their First Amendment rights and right to interstate travel.  Because Plaintiffs have

failed to allege that either of those rights were violated, their due process claim necessarily fails.

However, even assuming Plaintiffs have stated a claim, their due process count would still fail.

As Plaintiffs note, when considering whether an individual has received adequate

procedural due process, courts consider three factors: the private interest involved; the risk of an

erroneous deprivation of that interest; and the government's interest.  Pls.' Opp'n at 8 (citing

*Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).  Here, all three factors weigh in favor of the

District.

First, Plaintiffs incorrectly define the operative private interest.  Plaintiffs repeatedly try

to characterize their interest as simply a desire to exercise their right to free speech.  *See, e.g.*,

Pls.' Opp'n at 8–9.  But free speech, in an abstract sense, is not what this case is about.  This case

is about Plaintiffs' desire to enter the District using certain exits so that they could allegedly later engage in protected activity—and also apparently using commercial vehicles to do so.[5] Given that many other avenues existed for Plaintiffs to enter the District, including public transportation, the private interest implicated by a brief closure of certain exits off of certain highways is, at best, minimal.

Second, Plaintiffs wholly ignore the District's discussion of the policies and procedures in place relating to First Amendment activity. *See* Def.'s Mem. at 6–8, 15. To the extent Plaintiffs were seeking to use certain exits off of certain highways in connection with their planned First Amendment assembly, the District has well-established, publicly available procedures for how they could have sought permission to do so. Plaintiffs fail to identify any additional safeguards that would prevent erroneous denials of requests similar to theirs.

Third, the District obviously has a significant public safety interest when it comes to managing traffic, especially when it comes to large commercial vehicles. While Plaintiffs assert that "no court in American jurisprudence has held that lessening traffic delays, alone, trumps a citizen's interest in exercising his or her fundamental rights," Pls.' Opp'n at 11, the District cited several such cases in its Motion, *see* Def.'s Mem. at 21. The District now offers two more. In *Cox v. State of Louisiana*, the Supreme Court explained that "[o]ne would not be justified in ignoring the familiar red light because this was thought to be a means of social protest," nor "could one, contrary to traffic regulations, insist upon a street meeting in the middle of Times Square at the rush hour as a form of freedom of speech of assembly." 379 U.S. 536, 554 (1965); *accord Frye v. Police Dep't of Kansas City, Mo.*, 260 F. Supp. 2d 796, 799 (W.D. Mo. 2003)

---

[5]     In yet another attempt to rely on allegations outside of the Complaint, Plaintiffs' Opposition includes a discussion of the type of vehicles they were purportedly driving. Pls.' Opp'n at 11–12.

("The First Amendment does not entitle a citizen to trespass, block traffic, or create hazards for others.").

Accordingly, all three *Mathews* factors show that Plaintiffs, even if they had alleged a violation of their First Amendment rights (and they have not), were not denied due process.

**VI.   Plaintiffs Have Failed to Allege That Any Violation of Their Rights Was Caused by an Official Policy or by a Custom.**

The District explained in its Motion that plaintiffs seeking to hold a municipality liable for a violation of their constitutional rights must show that the violation was caused by an "official policy." Def.'s Mem. at 25–27. Plaintiffs do not allege, and do not argue in their Opposition, that their alleged injuries were caused by the actions of a policymaker, by a custom or practice, or by deliberate indifference. *See* Pls.' Opp'n at 14–16. Instead, Plaintiffs base their theory of municipal liability solely on the express policy prong. *Id*. at 14.

Plaintiffs seemingly argue that an express policy exists here by virtue of "the actions committed by District officials, including at least one MPD officer who by his own admission, acted 'as a representative of the D.C. government.'" *Id*. Plaintiffs misapply the express official policy prong of *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003). Under the express official policy prong, Plaintiffs must show "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Lederman v. United States*, Civil Action No. 99-3359, 2007 WL 1114137, at *3 (D.D.C. Apr. 13, 2007), adhered to on reconsideration, 539 F. Supp. 2d 1 (D.D.C. 2008) (citing *Pembauer v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). In other words, the alleged official policy must have been "formally adopted by an official policy maker." *Howell v. Town of Ball*, 827 F.3d 515, 527 (5th Cir. 2016). Plaintiffs' Complaint fails to identify any official policy maker let alone a formally adopted

10

policy, therefore it fails to set forth a viable theory of municipal liability.  Plaintiffs' claims

should also be dismissed for that independent reason.

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' Complaint with prejudice.

Date: September 14, 2022.                              Respectfully Submitted,

                                                       KARL A. RACINE
                                                       Attorney General for the District of Columbia

                                                       CHAD COPELAND
                                                       Deputy Attorney General
                                                       Civil Litigation Division

                                                       */s/ Matthew R. Blecher*
                                                       MATTHEW R. BLECHER [1012957]
                                                       Chief, Civil Litigation Division, Equity Section

                                                       */s/ Richard P. Sobiecki*
                                                       RICHARD P. SOBIECKI [500163]
                                                       PAMELA A. DISNEY [1601225]
                                                       Assistant Attorneys General
                                                       Civil Litigation Division
                                                       400 6th Street, NW
                                                       Washington, D.C. 20001
                                                       Phone: (202) 805-7512
                                                       Email: richard.sobiecki@dc.gov

                                                       *Counsel for Defendant*